We'll hear argument next in Case 21-588, United States v. Texas. General Prelogar. Mr. Chief Justice, and may it please the Court, Texas designed SB-8 to thwart the supremacy of federal law and open defiance of our constitutional structure. States are free to ask this Court to reconsider its constitutional precedents, but they are not free to place themselves above this Court, nullify the Court's decisions in their borders, and block the judicial review necessary to vindicate federal rights. As this case comes to the Court, there are three principal questions. First, is Texas responsible for this law? Second, can the United States sue to hold Texas to account? And third, is the injunctive relief available? And the answer is yes, down the line. Texas is responsible for the constitutional violation here. It enacted a law that clearly violates this Court's precedents. It designed that law to thwart judicial review by offering bounties to the general public to carry out the state's enforcement function. And it structured those enforcement proceedings to be so burdensome and to threaten such significant liability that they chilled the exercise of the constitutional right altogether. The United States has a manifest sovereign interest in suing to redress this violation. SB 8 is a brazen attack on the coordinate branches of the federal government. It's an attack on the authority of this Court to say what the law is and to have that judgment respected across the 50 states. And it's an attack on Congress's determination that there should be access to pre-enforcement review in federal court to vindicate federal rights. The United States may sue to protect the supremacy of federal law against this attack. Finally, the injunction is a response to Texas's unprecedented law. If Texas can nullify Roe and Casey in this manner, then other states could do the same with other constitutional rights or other decisions of this Court that they disfavor. Federal courts are not powerless to craft relief to stop that intolerable threat to our constitutional hierarchy. General Preliger, would you spend just a few minutes on the United States' interests that gives you a basis for being involved in this suit? Of course, Justice Thomas. The interest of the United States here is the sovereign interest in ensuring that states cannot flout the supremacy of federal law by enacting a law that's clearly unconstitutional and then through this simple mechanism of outsourcing enforcement authority to the world at large, blocking the traditional mechanisms for judicial review that Congress in Section 1983 and the Biscord and Ex parte Young recognized would be vital to securing federal constitutional rights against that kind of law. Is there any difference between legislation and precedent of this Court as far as the supremacy interest that you have? I think that if the state structured a law in exactly this manner to try to flout this Court's precedents, for example, interpreting statutes, that it would raise that same kind of supremacy concern. But of course here, I think that the situation has additional urgency because what Texas has done is taken a constitutional precedent from this Court and legislated in direct defiance of that precedent and then tried to, in the words of the interveners, box the judiciary out of the being able to provide any meaningful form of redress. You based your involvement quite a bit on debts. Can you give me a couple of examples where the United States has taken a similar action based on debts? I'd be happy to. And I want to acknowledge at the outset that we can't point to a case that looks exactly like this one, and that's because there has never been a law exactly like this one. No state has ever sought to challenge the supremacy of federal law and keep the courts out of the equation in quite the same way. But I think that there are relevant principles to distill from the Deb's line of cases. And what the Court has said is that the United States cannot come in and seek to intervene in a merely private dispute. It needs to be acting on the basis of the public interest and the public at large. And that further, the subject matter of the suit has to be one that concerns and is entrusted to the care of the nation as a whole and for which the nation owes a duty to her citizens. And this Court, in various precedents in the Deb's line, has recognized that that kind of sovereign interest can occur in a variety of circumstances. For example, in the American Bell case, the Court recognized that the United States could sue an equity to seek to void a patent that had been obtained by fraud, even though the United States was acting on behalf of the nation as a whole to ensure that there couldn't be an acquisition of a monopoly that was based on fraud in that manner. Well, actually, what I'm more interested in is have you done something similar when a constitutional right has been involved? For example, there was much discussion about tort actions that were allowed in states involving Second Amendment rights. I'm sure there were many opportunities in the area of race, particularly during segregation, to do similar things. Do you have any examples, not precedents, but examples of the national government taking part in or playing the exact same role or doing exactly what you're doing in other areas involving constitutional rights? I don't have examples, but that's because I'm not aware of any circumstance where a state before has sought to prevent access to the ordinary mechanisms for judicial review. Well, even if it's not exactly the same, when a constitutional right is being frustrated by a state process, have you sought to participate in the manner that you're participating now because the supremacy of a U.S. law or constitutional right is not being respected? Well, I want to be very clear, Justice Thomas, that we're not asserting here an authority to sue just because the state enacted an unconstitutional law. Ordinarily, that wouldn't present the same grave threat to supremacy because under Section 1983 or The interest we're asserting here isn't intrinsically tied to the underlying substantive right at issue. It's tied to the fact the state has structured this scheme in a deliberate attempt to prevent federal courts from doing anything about the constitutional violation. And because a state has never before crafted an enforcement scheme like this, there's not been the kind of situation that would prompt the United States to intervene in this manner. General Prelogar, could I take you to one of the other questions that you started with? In these extremely unusual, unprecedented circumstances, you said the court is not powerless to craft relief. Well, you heard the last argument and there were much of the last argument was all about what would relief look like and how should we craft relief if relief were appropriate? And there were, you know, is it an injunction against the clerks or is an injunction against the state AG or is it an injunction against fill in the blank? How should we craft relief? I think the appropriate relief here is the relief that the district court entered. The court enjoined Texas from implementing SB-8 and enforcing it in any manner. And then the court went further to identify all the various stages of the SB-8 enforcement proceedings where that injunction would operate to stop the threat of those enforcement actions that have chilled the exercise of the right. And there were three relevant features. First, the district court said that the injunction would appropriately bind those SB-8 plaintiffs who actually choose to exercise the state's enforcement authority. And so those who actually file suit thereby act in concert or active participation with the state. Second, the district court recognized that in these very unusual circumstances, it was also appropriate to bind the clerks and the judges who are being used as part of the machinery of this apparatus to impose the substantial chilling effect through the SB-8 enforcement actions. And finally, the district court recognized that the injunction would reach on the back end any effort by state officials to enforce those judgments because that too would perpetuate the constitutional violation. So I think we have the model already. It's the injunction the United States obtained in this case, and it's intended to provide full and complete relief against the threat, the grave threat that SB-8 is posing to the supremacy of federal law right now. And if there's some fear that the law we make about how to craft relief will apply in other cases where it's not so necessary, what would you say, what would you do to ensure that that did not take place, to essentially cabin this kind of relief to the peculiar circumstances of this case? I think it would be appropriate to cabinet in two ways. First, in recognition that ordinarily it is far more appropriate to enjoin the upstream enforcement agents who would be bringing cases to the court in the first instance. That is the ordinary way that an ex parte young action proceeds. And if the state had not specifically thought to thwart that mechanism here by outsourcing the enforcement authority to the general public, that kind of injunction would have been appropriate. But the problem is that the state has specifically, by delegating to members of the general public this enforcement authority, it's specifically made it impossible to determine in advance who was going to become an SBA plaintiff, who was going to actually choose to file suit. And I think in that circumstance, injunctive relief that prevents the state court proceedings from going forward is appropriate. And then the second limitation that I think the court could articulate is that this is the rare case where the mere existence or threat of the litigation is itself causing the constitutional harm. It's the flood of SBA enforcement suits that could be filed that is the exercise of the constitutional right today. And it's not normally the case in an ordinary suit that the mere prospect that there could be a case filed would create this kind of profound harm and chilling effect on constitutional rights. But that was Texas's intent here. That was its clear purpose. And it's the actual effect. Because right now in Texas, that constitutionally protected care is not available. General, I appreciate your point. Texas, as you say, has done everything it possibly can to try to make it difficult for abortion providers to vindicate their rights under our precedents. I get it. I think it's a forceful argument. But I think we have to be concerned about the implications of the mechanisms that you propose for providing some kind of relief. A lot of your brief and all the other briefs that have been filed against Texas in both of these cases suggest that we should issue a rule that applies just to this case. But that's inconsistent with the rule of law. When we decide a case, the rule that we similarly situate it. And if you look at the particulars of the enforcement mechanisms, they are unprecedented and they provide cause for concern. And so I'd really like to hear your explanation about why they're appropriate and how they can be limited to this case. Start with the judges. It's unprecedented. And it is contrary to our system of federalism to enjoin a state judge even from hearing a case. When has that been done and how can that be justified? The judge is a neutral arbiter. The judge is bound to apply the Constitution. How can you enjoin a judge from performing a lawful act, which is the adjudication of a case that is filed before the judge? Well, I want to be perfectly precise that in our case, the district court enjoined Texas and found that that injunction could properly reach the state court personnel who would be then exercising the state's authority. Well, Texas is an abstract entity and an injunction has to apply to people. Yes, there are instances where a state has been enjoined. And what that means is that everybody under the control of, let's say, the state, everybody who has to follow what the state attorney general says has to comply and the state can work out the way that would work. But that doesn't apply to state court judges. Well, I certainly acknowledge, Justice Alito, that an injunction that would bind state court judges is extremely rare. It's not unheard of. And I think in the unprecedented facts of this case, it's appropriate relief. Let me just interrupt you. Judges have been enjoined from performing unlawful acts. But here, the act that they are enjoined from performing is a lawful act. How can that be justified? Let me give you this example. Suppose an action is brought under SB 8 in federal court pursuant to diversity jurisdiction. Let's say a woman sues a doctor who has flown in from another state to perform the abortion. Would the district judge in this case have the authority to enjoin another district judge from even hearing that case? No, I don't think that the injunction could properly reach the federal system. I don't think that there is any realistic possibility that any of these suits could possibly proceed in federal court because the distinct feature of SB 8 is that the plaintiffs who are authorized to need not have any injury or suffer any harm from the prohibited abortions. And so I think the idea that there would be a proper basis for Article 3 jurisdiction is lacking. Well, it's certainly possible to think of cases where there would be federal jurisdiction. A woman sues an out-of-state doctor in diversity under SB 8 for physical or emotional harm suffered as a result of the one federal judge can't enjoin another federal judge. But a federal judge can enjoin state judges because they're lower creatures. That's the answer. That is not what I mean to suggest. Here, the injunction runs against Texas and the state court judges in Texas are being utilized by Texas to effectively create an apparatus that is so lopsided, so procedurally anomalous, and so hostile to constitutionally protected conduct that the mere existence of the suits, no matter how the judges adjudicate them, create the constitutional harm by chilling the conduct. And so we are not suggesting that the judges would do anything other than actually follow federal law here. We think each and every one of these SB 8 suits would inevitably be dismissed because the statute is so clearly unconstitutional, but that doesn't remedy the constitutional harm because the constitutionally protected care isn't being provided in the first place. General, to achieve this injunction against the state courts, do we also have to overrule Ex parte Young, where we said, I'll just quote the relevant that I've got before me, an injunction against the state court would be a violation of the whole scheme of our government. The difference between the power to enjoin an individual from doing certain things and the power to enjoin courts from proceeding in their own way to exercise jurisdiction is plain and no power to do the latter exists because of the power to do the former. So do we have to overrule at least that aspect of Ex parte Young? No, Justice Gorsuch. I think that that aspect of Ex parte Young has to be read in the context of the court's recognition there and the whole thrust of the opinion that the appropriate relief would run against the enforcement agent. I understand that, and that was Justice Breyer's point earlier, but Ex parte Young also said this, and I think that's just, am I wrong? How do you reconcile saying you can never enjoin a court with saying you can here? Something has to give, doesn't it? Well, I certainly think that it is not uncommon in equity to have relief that is targeted to prevent a suit in law from proceeding. I acknowledge it's unusual to have that relief run against the judges themselves, and if this court has concerns with that approach, I think that the court could rightly recognize that the remedy here could focus on the clerks engaged in the ministerial task of docketing the cases, and as our injunction does, against the SBA plaintiffs who are actually exercising the court's enforcement authority. But I do think that the court's statement in Ex parte Young has to be read against the backdrop of this court's recognition that there would be otherwise effective relief available, and what we're confronting here is a situation where it's very difficult to find that effective relief by design because Texas designed the law specifically to thwart it. General, do you agree that there are instances in which no federal forum is available to adjudicate a federal right? Yes, I do agree, but that is sometimes the case. You also agree that it's sometimes the case that a federal right can only be enforced defensively and not in a What are the elements that must be necessary for you to seek the kind of equitable relief that you are seeking here? Would it be limited to cases where every single one of the characteristics of SB8 that you mentioned are present? Must they all be present, and if that is the case, is this what you're seeking, a rule for one case? I don't want to suggest that every single feature of SB8 would necessarily have to be replicated, but I think that the overall inquiry would have to focus on whether the state has deliberately sought to prevent any effective means of judicial review, and here we have it both with respect to federal court. Of course, the state is thought to supplant the traditional 1983 action, Ex parte Young action, but we have it on the back end as well, where the state is trying to purposefully make these SB8 enforcement proceedings so anomalous, procedurally anomalous, and feature rules that are so stacked in favor of plaintiffs and defendants that the clear purpose and actual effect is going to chill the right, and I think that this is a response to Justice Gorsuch's questions as well, because although it is true that sometimes there's not a federal forum to raise a federal claim, for example, with defamation, it's not the case that in those circumstances the state court proceedings are heavily weighted in favor of the plaintiffs with the evident intent to chill the speech from occurring, and the proof is in how this has actually worked in practice, because defamation actions haven't meant that no speech occurs. Well, counsel, but we've created a whole substantive law of defamation out of concern for chilling effects, and why on that theory wouldn't we go one step further? For all the reasons you've provided, they're good reasons, and I think Justice Alito's said they're strong arguments. Why wouldn't we do the same thing for that other very vital and important right, or the Second Amendment right, or the right to free exercise of religion? They're all, we don't get to pick and choose among our rights. We're supposed to enforce them all equally. Why does this one get special treatment? This law is different because it has taken the ordinary state court mechanism that might be an appropriate way to vindicate the rights, whatever they are, and it's purposefully sought to— But you'd agree, you'd agree that tort laws for defamation have a chilling effect. Yes, but they have— And you'd agree that gun control laws also have a chilling effect. They can, but not— And you'd agree as well that laws restricting the exercise of religion can have a chilling effect. I'm not denying, Justice Gorsuch, that those kinds of laws can have some measure of chilling effect on the margins, but they look nothing like this law. You're not suggesting, General Prelogar, that this right is different, are you? If this exact law were issued by a state that wanted to be hostile to gun rights, your argument would be the same, would it not? It would be exactly the same because the threat here is to the supremacy of federal law that's accomplished by trying to cut off the channels of judicial review that Congress recognized in Section 1983 would be vital to vindicating federal rights, whether that's Second Amendment rights, or rights to religious liberty, or here the right to abortion. Well, it doesn't matter that it's the abortion right. How about the issue of severability? You want to enjoin every action that's brought under SB 8, even though some of them would not violate Roe or Casey. And I guess the justification for that is that in the abortion context, as we held in the prior Whole Woman's Health case, severability doesn't count. Normally, we pay attention to severability clauses, but I guess when it's abortion, if there's one provision of a statute that's unconstitutional, the whole thing sinks. Is that your position? Well, our position is that the district court rightly applied this court's decision in Whole Woman's Health v. Hellerstadt and concluded that it would effectively amount to legislative work to walk through SB 8 and try to parse it provision by provision and application by application to determine which applications would be constitutionally permissible. Well, is that what you want us to do if we find one provision of some massive federal statute unconstitutional down the road? Well, it's too much work to go through them all. We're just going to strike down the whole thing. You want us to do that? The difference here, I think, the district court recognized is that it would actually require rewriting the statute to try to reach those lawful applications. And I think, in particular, in this preliminary injunction posture where the court was acting on an emergency basis, that kind of parsing wasn't necessary. But if this court disagreed, I think all that would show is that the court should confine the injunction to the applications that are unlawful under Casey and Roe and make clear that the only acceptable implementation of this would be with respect to post-viability abortions. And, of course, Texas already separately prohibits post-viability abortions. The providers don't provide them. So I don't think that that would have any actual real-world effect. Can you go back to Justice Thomas's question? Imagine those columns there filled with the California Civil Code. And let's take out those parts that don't deal with private people, so we have property and torts and so forth. And someone in your office says, I've been reading that. Don't ask me why. But I found 19 provisions here that I think are unconstitutional. Let's go bring a case. Now, if we accept your argument, I guess that person has a good point. I'm a little nervous. So far, what you've said to distinguish this one is you said, but here Texas purposely did this. Boy, that raises a whole other set of issues, as you well know, when you say the Legislative History Council, blah, blah, blah, blah, okay? Oh, but you said that they're not giving a good forum in the state to test out the constitutionality. And now I think about the California Civil Code or the Procedure Code or the Constitution. Is that the test? Have you sat down and thought through what are the implications of the test? Or is it that the federal government, no matter who's in charge, without a statute, whatever party, whatever president can just go and intervene in any case, can bring a federal case whenever they think a state law is affecting private people is unconstitutional. And if not, what's the test? No, Justice Breyer. We are not urging a broad authority to bring a suit like this in the circumstances that you identified. And I think that there are two critical distinctions here that separate those circumstances from the ones we confront with SB-8. First, here, it is perfectly clear that Congress intended to have a federal court forum for the vindication of this type of claim through Section 1983. And the state is purposefully trying to manipulate it through the Delegated Enforcement Authority and avoid that federal court forum. And second, with respect to the state court proceedings, it's not just that these proceedings, in my estimation, deny a fair forum. It's that by their very design, with respect to each and every procedural and substantive rule, they display open hostility to federal rights and try to prevent any effective forum to get statewide relief, declaring this law in violation of this court's precedent. Thank you, Counsel. I share some of the concerns that have been voiced by my colleagues. You say this case is very narrow, it's rare, it's particularly problematic. But the authority you assert to respond to it is as broad as can be. It's equity. You said we have the authority to sue states under equity, which is a limitless, ill-defined authority. And I just wonder, I know you've been asked this question before, but if you could repeat your answer, what is the limiting principle? When we get another case down the road where it's a different Solicitor General who's making this argument in a different case, what are we going to be able to point to that says, no, no, you can't invoke that broad equity power, or you can't say just because there's a state statute that is enforced by private parties, which is a very common phenomenon, that you then get to sue the states? Well, Mr. Chief Justice, the equitable remedy that we're seeking here is not limitless. It is the traditional remedy of enjoining implementation of an unconstitutional law. And the limiting principle that will govern... Well, it's hardly traditional to get injunctions against judges, injunctions against clerks, injunctions against everybody, right? That's part of the relief you seek, isn't it? Anybody can bring one of these suits, so you're seeking an injunction against the world, right? No, we're seeking an injunction against those who actually choose to involve themselves in the constitutional violation by filing suit. Well, anybody can do that. But anyway, I'm sorry. It's true. I just wanted to be very clear that the injunction doesn't apply to the plaintiffs, but to try to address the concern you've raised. I think that here the limiting principle arises from the way the statute operates to try to deprive any meaningful review anywhere, whether in federal court at the outset, whether in state court on the back end through the enforcement proceedings. And I recognize that this seems like a novel case, and that's because it's a novel law. But we do not think that a recognition here that the United States can floodgates in the mind-run situations where a state is simply applying a private right of action through ordinary and fair state court proceedings. Justice Thomas? As to the potential private plaintiffs, how can they be bound under Rule 65 of the Federal Rules of Civil Procedure? With what party are they acting in concert? They're acting in concert with the state of Texas, which has created the bounty that incentivizes their conduct and has created the apparatus through the enforcement proceedings that allow them to perpetuate this constitutional violation. With the state, not with any individual who is a party? That's right. We believe that they act in concert with the state, which is the named defendant here and bound by the injunction. So would any private plaintiff bringing any common law tort suit be acting in concert with the state under the laws of which that claim is asserted? No, but there's a world of difference between an ordinary private right of action and the exercise of that kind of private enforcement and what SBA contemplates. I understand that, but why is the question whether they're acting in concert with the state any different? Here they're acting in concert with Texas, you say, because they are bringing suit under a Texas law. So if somebody brings suit in Maryland under Maryland defamation law, they're acting in concert with Maryland. Is that right? No, and we're not suggesting that every private right of action is governed by these same But the key difference here is that the individuals who are SBA plaintiffs are actually exercising the state's own enforcement authority. This is not meant to remedy some private harm that those individuals suffered. And I think that the best example or illustration of that is that the $10,000 plus bounty that the state has created is only available to the first comer. And so the suggestion that was made earlier by Texas that this could be some redress for This is meant to simply function as a method of encouraging the suit to be filed on the state's behalf. And in that circumstance, we think it can qualify as active concert or participation. The Texas Constitution requires injury, in fact, and this statute, as I understand it, permits an award of actual damages in addition to liquidated damages. And there's nothing particularly unusual about a statute that provides for liquidated damages. So I don't understand your answer at all. Well, Justice Alito, if that's what the statute was attempting to accomplish, then presumably it would apply those liquidated damages to every single SBA plaintiff. It wouldn't limit it to just the first person who is able to effectively bring to bear the coercive force of the state's enforcement authority. And so the suggestion here that the $10,000 is meant to provide a presumptive dollar amount on personal injury, I think is inconsistent with how the statute operates. So one final question. The federal rules do provide a mechanism for you to do what I gather you're trying to do with respect to these potential private plaintiffs, and that is to certify a defendant class. Did you try to do that? Have you satisfied the requirements of Rule 23 to do that? We did not try to do that. And again, I think this relates to my answer to the Chief Justice that the injunction doesn't reach the world at large or every possible person, but anyone, anywhere who is authorized under this law to bring suit. Instead, it's narrowly focused on those individuals who choose affirmatively to exercise the enforcement authority by filing suits. Justice Sotomayor? What happens to your lawsuit if we were to find that whole woman's health is justifiable? I think that that wouldn't retroactively operate to extinguish the sovereign injury that the United States experienced when Texas passed this law and clearly attempted to thwart judicial review at a time when the law was unsettled. But I do think that if this court clarified in whole woman's health that the providers can move forward with their suit, and if it forcefully rejected Texas's effort here to sign me that kind of federal court review, then we wouldn't have the same sovereign interest in a future case because at that point, the law would be settled and this attempted circumvention would clearly not work. They can't sue the state the way you can because of sovereign immunity. So one of the big issues for them, and I'm not asking you to litigate their case, but I'm asking for your views of how it affects yours, is who do they sue? They haven't sued like you have all SB8 plaintiffs who file suit. They sued a clerk of the court, a judge, and attorney general, and other state officials. So how do they get the relief that you're seeking? You've heard Justice Alito say not everybody has been named because the SB8 plaintiffs have not been named. So how can they be banned? That's right, Justice Sotomayor, and I think that that reflects that the relief that we're seeking is in some respects different than the relief that the providers could obtain in their suit because they don't have a mechanism to identify or sue the SB8 plaintiffs. Here, our injunction can rightly reach those plaintiffs because the state of Texas is subject to our suit, and then the plaintiffs can be bound under Rule 65. I think that the providers therefore have rightly focused on trying to target the aspect of the enforcement proceedings that create the harm through the filing of the cases in the first place, and I understand that to be the basis of their request that the court recognize their claim as against the clerk class. Thank you. Justice Kagan? Well, is it also possible that in the whole women's health suit that the AG could stand in for the individual plaintiffs in the way that in your suit, the state essentially stands in for the individual plaintiffs? I think that is possible, Justice Kagan, and so if this court concluded that the AG of Texas could properly be enjoined here in the provider's suit, then that effectively, I think, would pierce the fiction here that the state has tried to create by delegating the AG's enforcement authority to the world at large, and could rightly try to target that aspect of the enforcement scheme. Justice Gorsuch? General, are you aware of a precedent that permits an injunction against all persons in the country, the world, the cosmos who bring suit? No, Justice Gorsuch. Our injunction doesn't do that either. But you said it against anyone who brings suit, right? So I did include that in my limitation. Am I missing something? Just to be clear, and I'm sorry if I wasn't clear about this before, we understand the injunction only to bind those individuals who choose to file a suit, and so at that point, they identify it. I'm asking you, counsel, are you aware of any other example of such an injunction? With that specific term? I can't cite one to you? Not in the history of the United States. You can't identify one for us, right? In the history of the United States, no state has done what Texas has done here. All right, and then with respect to those individuals who would be bound, could they, for filing a lawsuit in defiance of it and then maybe filing a discovery request or taking some other action, be held in criminal contempt? They couldn't be held in contempt without receiving notice and an opportunity to be heard, and so I think that they would have an opportunity. There's always that opportunity to be heard before criminal contempt proceedings, but could they then be held in criminal contempt, consistent with procedural due process? Yes, so long as they had notice of the injunction, they could be. Oh, so if they didn't have notice of injunction, then you're saying contempt is not possible? That's correct. Okay. Are you aware of another circumstance where an injunction's been issued where contempt's not possible? Well, Justice Gorsuch, I think in any circumstance where someone didn't have notice of an injunction, contempt wouldn't be possible. Is the answer no, counsel, or you're not aware of one? I think that it's actually every injunction operates that way. Because every other injunction provides notice in advance and this one doesn't, so this one uniquely alone wouldn't allow for contempt proceedings. Is that your argument? No, the district court specifically tried to facilitate notice by providing that... Counsel, if you could answer my question, please. You're saying that it can be entered without notice, an injunction can be entered without notice, you're not aware of one prior to that, and I'd just like a straight answer as to whether those individuals in these circumstances could be held in criminal contempt or not. If they did not have notice of the injunction, then no, they cannot be. Okay. And is this an advisory opinion saying, don't file these things, we will throw them away, but we have no contempt power to enforce? No, because the injunction does appropriately bind Texas and it does appropriately bind all of those individuals who exercise the state's enforcement authority... What is an injunction without enforcement power? There would be enforcement power here, both with respect to the state, with respect to the individuals who have actual notice and file these suits, with respect to the court personnel who would violate the terms of the injunction, and with respect to the enforcement agents at the end of the day who would be enforcing these judgments. On Deb's question that the Chief Justice raised, just to press that a little bit further, an assertion of an equity right here, and I think Justice Thomas alluded to this too, has the United States government ever before asserted this equity right to protect individual rights in any other state, ever? Well, I want to be clear that the right that we're asserting here is to protect the supremacy of federal law. And I'm asking, have you ever done that to defend the supremacy of individual rights in any other situation anywhere in the country in our history? We have brought suit before. It was a series of cases in, I believe, the 1970s that did not work their way up to this court. The United States urged a broader theory there to be but that's not the argument that we're making here. Instead, we are arguing that the specific thing that gives us... Besides that one suit, are you aware of any others? No. I believe there were three suits in that line. Thank you. Justice Kavanaugh? General, in the prior case, the plaintiffs would be the same plaintiffs if it were an ordinary ex parte young situation. General Stone would be representing a state DA or state executive official. We'd have arguments about the merits, which we're obviously not dealing with today, but it would be the same basic situation. There is an extension of ex parte young to get to the prior cases we've talked about and that's an important step that we have to analyze. Your case, by contrast, seems, and I'm probably repeating others' questions, just different and irregular and unusual and we don't know where it goes. If you could fill in, and maybe this will be repetitive, but you think the U.S. has authority to bring a suit like this against any state law that... That violates this court's precedence and tries to shield that violation from any effective judicial review in federal or state court. And I recognize, Justice Kavanaugh, that this is an unusual suit. The United States does not lightly invoke an authority like this to sue a state. The reason we've done it here is because SBA is so unprecedented, extraordinary, and extraordinarily dangerous for our constitutional structure. If Texas is correct, that it can nullify this court's precedence and it can successfully evade the mechanisms that this court recognized in ex parte young and Congress recognized in section 1983, then no constitutional right is safe. And we think that in this extraordinary circumstance, the United States has a sovereign interest in intervening to protect the supremacy of federal law. What if our precedent on something in a different area of law altogether was just uncertain? There was an open question about something and a state wanted to kind of tab and draw a line with respect to the precedent. Would the U.S. have the authority there? Is there something about what you think is the clarity of the violation here that triggers your authority? If the state structured that hypothetical law in this same way, then we would have the same concern that the state is effectively seeking to take the issue away from the court. And so, you can imagine a circumstance where a right is more unsettled. Imagine, for example, in a pre-Heller circumstance, the right to possess handguns in the home. If D.C. had enacted a law that deputized members of the general public to seek these kinds of suits against that conduct, even before the court had clarified the right, I think that that would have raised the same concern that effectively the state is seeking to box the judiciary out of being the final arbiter of constitutional rights. Now, I will say that I think that a state is far less likely to engage in this kind of mechanism with an unsettled right because it would think that its law is constitutional, and I would assume that it would want to forthrightly defend it and get a court ruling that confirms that point. But if the state instead sought to shield the law through this mechanism, it would raise the Supremacy Clause concern. Thank you. Justice Barrett? I just want to follow up briefly on the questions that Justice Kagan and Justice Sotomayor were asking you about what happens to your suit if the plaintiffs in the Women's Health suit prevail. Let's imagine that they do prevail on a theory that the Attorney General has this residuum of authority and that the private parties can be bound as state actors pursuant to Rule 65. You told Justice Sotomayor that then the United States' interest would not dissipate even in that scenario, and I guess I didn't understand that. You phrased it, I think, in the past tense that that wouldn't cure the affront to sovereignty that was already there. But, you know, the force of your argument for equity here is the inadequacy of a remedy at law because of the way that Texas has cut off access to the Ex Parte Young remedy. So could you just explain to me why your suit would continue to be live or why there would be an argument in favor of it if Justice Sotomayor's hypotheticals were in play? Yes, of course, Justice Barrett, and I appreciate the chance to clarify. I don't mean to suggest that the suits wouldn't interact with each other with respect to what kind of Justice Sotomayor I'm talking about, but I understand Justice Sotomayor to be asking me whether our suit is effectively contingent on the whole women's health litigation. And my response was that you have to measure the sovereign injury here at the time the statute was enacted, and when the statute was enacted, it was clear that Texas was seeking to deprive others of having an opportunity to go to federal court for a remedy. The law was unsettled, and it was apparent, and in fact has been the effect, that Texas has succeeded in being able to nullify the right currently while these cases are working their way through the courts. But I do think that if this court provided guidance in whole women's health and made clear that a state cannot succeed with what Texas has attempted to do here, then we wouldn't have that same circumvention concern in the future. But in all candor, the concern is that then a state might seek to legislate around whatever the whole women's health decision says. It might try to tweak its enforcement mechanism in some way to get around that ruling. And I think that what that shows is that when a state attempts to thwart judicial review and creates that possibility that the supremacy of this court's decisions will not be respected, the United States may sue in equity to redress that harm. So it would be kind of a pile-on injunction, like they would have an injunction against the attorney general and the private plaintiffs acting as state actors, and then we would also enjoin, let's say that we didn't want to enjoin the clerks and the entire the state of Texas could really only obtain one against the executive officials who would enforce the law. You're asking just for the same injunction in your suit, but just acknowledging that the United States has the ability to bring this kind of in re deb suit? Well, I think that it's important to separate out the question of authority to sue with what kind of relief might be appropriate. So we do think that when we filed this suit, and at that point, of course, there was no relief being and it had chilled a constitutionally protected right out of existence, that at that point, we were authorized to bring suit. The question of what the appropriate remedy would be, I think, is a separate one, and I think it very well could be the case that there would not be a need for duplicative injunctive remedies in both of these cases, but that's a separate and distinct question from whether we could sue in the first place. Thank you. Thank you. General Stone, welcome back. It's been a long time. Thank you again, Mr. Chief Justice, and may it please the court. The Department of Justice's suit offends the separation of powers by usurping for the executive branch the role Congress plays in determining what cases may be heard and what remedies may be provided in the federal courts. As discussed earlier this morning, no Texas official is a proper defendant in a pre-enforcement challenge to SB 8. The United States cannot cure that problem by naming the state of Texas as a nominal defendant and then asking for relief that runs against the same Texas officials that are inappropriate targets for injunction under bedrock Article III and equitable principles. Moreover, the United States is not a proper plaintiff. It cannot claim a sovereign interest in suing to enforce individual rights under Casey and the remedy it seeks would be completely foreign to traditional equity. Congress must create such novel remedies if they are to exist at all, and Congress has impliedly rejected giving the United States such relief by providing other avenues to vindicate 14th Amendment rights. Like the petitioners in Whole Woman's Health, the United States asks this court to disregard all of this because it deems SB 8 a novel problem for which this court must concoct a novel solution. Even if it were, and it is not, such a request must be directed to Congress. The United States cannot seriously assert that the Constitution requires pre-enforcement federal judicial review. It opposes that result in virtually every other case. This court should reject its request for a special forum, remedy, and cause of action for this case alone. I welcome the court's questions. Is there any instance in which the United States can do what it's doing now that would be acceptable to you? That is, let's say there is no question whatsoever that a state is defying on a national law or a federal law or a constitutional provision, such as, for example, the Second Amendment. Is there any instance in which the United States could step in? So, Your Honor, I have to first clarify. Are you saying with a cause of action provided by Congress or only in this in re debs style? In re debs. Your Honor, to the extent that Congress had provided either a proprietary right or had recognized the public harm in the form of a statute, for example, the Interstate Commerce Act, and then also the United States was seeking a traditional form of equitable relief, such as in debs to abate a public nuisance, then it could proceed. So a very narrow set of cases. Yes, Your Honor, but some. A separate question. I'm interested in the cases that are proceeding in state court. And this is a carryover from the first case. What remedies could be provided in those cases if they were allowed to proceed? Well, an individual could receive, for example, an injunction preventing the bringing of an plaintiff who seeks to do so. Now, of course, as discussed earlier to Justice Barrett, that would only provide relief against that one individual. But the more important part here is that eventually those sorts of cases be decided on stare decisis grounds by appellate courts, which would prevent follow-on cases to some extent. But in terms of relief, you get declarations basically out of the Texas state system, a declaration that an application of SB-8 against an individual. I misspoke earlier with an injunction. I'm sorry. But a declaration that an SB-8 claim by that individual against the protected conduct that someone's raising would violate state law, federal law, whatever the claim might be. And one final point. Why wouldn't, and I think I've alluded to this before and asked this before, why wouldn't these private individuals be considered private attorneys generals? Because so much seems to be, one thing that seems rather implicit on the other side is that they are in effect, if not in designation by law, attorneys generals, because they are enforcing a statewide policy. So your argument again would be that they are not private attorneys generals because, or they are not acting in concert. They're not deputized. They're not agents because. Because they're not subject to the state's control. They don't have access to the state's investigatory resources. The state can't, at some point, for example, or take the case over like in a key TAM action, those sorts of answers that I was providing earlier, Justice Thomas. But my answer would run specifically to the lack of control between the state with regards to an SB-8 private plaintiff suit. Let me think about just a specific example, which was the worst one I could think of for it. I mean, suppose that Governor Faubus had this model law and said, anyone who brings a black child to a white school is subject to, and then we copy the law. There we are. Now, if you were in that situation, which I'm sure you're glad you're not, what would you do? If we uphold this, are we retroactively upholding that? No, Your Honor. As a matter of fact, for that very specific case, Congress has specifically provided— Oh, you know, this is before Congress. I mean, in 1957, Congress was no help. Believe me, they did nothing. Or if they did something, I'm unaware of it. And if they did something, I assume it out of the hypothetical. Fair enough. Fair enough, Your Honor. The answer would be that there would have to be recourse, again, to the state court. I'm assuming this is a state legislature because we're talking about federal court. This is Arkansas in 1957. Sure, Your Honor. And that, in fact, that that court would be obligated to apply this court's decisions. That's a transparent violation of the 14th Amendment, of course, Your Honor. We have to assume that state court judges— Yeah, but they didn't. I mean, we have some experience. And most of those cases that came up in that period to this court, the judges were aware of that experience, and they tried to shape the law to avoid it. So is there anything you can think of? I'm getting your answer is no. You cannot think of anything. The only thing we would have to have said then is, well, it's up to the state of Arkansas's judges. The problem, Your Honor, is that the number one answer to your question is the thing you've asked me to assume away, which is the thing Congress has actually done, which is in 42 U.S.C. 2000, the C-6 specifically provided a cause of action for the United States to maintain a cause of action of equal protection clause. Can I give you examples where Congress has it? A state dissatisfied with Heller says anyone who possesses a firearm anywhere is subject to litigation by any private citizen anywhere in the country and gets a million-dollar bounty. No salary decises, no nothing. How about in Obergefell? Imposes SBA-style liability on anyone who officiates, aids, or abets a same-sex wedding. How about dissatisfied with Lawrence v. Texas? Subjects a private conceptual sexual conduct of which it disapproved to the exact same law as SBA-8. How about Griswold? The use and sale of contraception is subject to SBA-style liability. So this is not limited to abortion. That's the point that's been raised. It's limited to any law that a state thinks it's satisfied with. Your Honor, I've at no point in the earlier argument of this one asserted that the extent of federal courts or federal court availability turns on the underlying right here. Quite the opposite. I agree with you. The point is that no matter how much a state intends to chill the exercise of a constitutional right, as the Chief said, imposing a million-dollar liability for an act, which I think almost any sane person except a couple of billionaires might choose to resist, that that does not give anyone a right to a federal forum when the state has deputized every citizen to act on its behalf. No, Your Honor. It does not create federal jurisdiction as a consequence. I do want, however, in the spirit of the hypotheticals that you're delivering, want to return to a point that Justice Barrett made at the end of my friend's previous argument. At a very minimum, to the extent that this court believes it has to somehow alter the ex parte young fiction, et cetera, to find a way to allow the plaintiffs in Whole Woman's Health to proceed, at a minimum, the United States' case must thereby fail. The United States just conceded up here that whatever interests they had would be purely retrospective as of there being some sort of ability to vindicate the rights that Whole Woman's Health and other petitioners are trying to provide. They only seek a preliminary injunction, which is by definition exclusively prospective relief, and they cannot possibly maintain their action any further. It goes exactly one way. If the petitioners in Whole Woman's Health have some sort of avenue of relief, then the United States must not, which makes sense given for the extraordinary cause of action that they're trying to bring here. Congress has provided the United States, certainly at times, sometimes with truly extraordinary powers, such as the power of preclearance. And to the voting rights, I could give one extraordinary example. The United States here would want effectively a follow-on injunction for, in their words, in the event that the state of Texas changed its law or otherwise tried to, in a way of uncharitably putting it, if the state of Texas changed its law to comply with this court's law and yet nonetheless have something like SB-8. We have a term for when a state is put into a state where they have to get the federal government's approval before it makes a relevant legal change, and that's called preclearance. That's precisely the kind of injunction my friend on the other side was speaking of. So it can't possibly be the case they'd be entitled to that sort of remedy, just as a matter of course, in the event that whole women's health succeeds or prevails to any extent. That's just one component of the extraordinary expansion of federal power that the United States is asking for here. Not only are they claiming a brand new sovereign interest, which can be synthesized one of two ways, either in ensuring the vindication of individual rights underneath this court's pronouncements in substance of due process, or apparently a sovereign right to ensure the expansion of access to the federal courts, because after all, Section 1983 and Congress's various statutes that compose the federal courts, they stand as they stand. Texas understands them as does this court. They stand for what they are. The United States can't possibly have a sovereign interest in extending the application of those doctrines to apply to cases to which they don't just because they deem this a very important case. General, if I understand your answer to Justice Sotomayor, it was, well, even if that's a really good question that I don't have an answer to in the other case, I do have an answer to it in this case. And that's fine. That's, you know, here you are, we're in this case now. But I guess I just would like to take you back to the other case and to ask you to answer the question that you said you wanted to avoid for Justice Sotomayor. I'm sorry, Your Honor. I thought I'd agreed that it doesn't depend on the nature of the right being asserted and that also none of the, we could sort of raise the potential sanction as high as possible and that wouldn't affect federal court availability. I'm sorry. I thought I'd answered that, but to make my answer expressly clear. The other dimension in which the United States is asking for an extraordinary power is the nature of the remedy they're seeking. I guess I do want to ask a question about that. I mean, if that's right, you know, and we say that we would live in a very different world from the world we live in today. Essentially, we would be inviting states, all 50 of them, with respect to their unpreferred constitutional rights, to try to nullify the law that this court has laid down as to the content of those rights. I mean, that was something that until this law came along, no state dreamed of doing. And essentially, we would be like, you know, we're open for business. There's nothing the Supreme Court can do about it. Guns, same-sex marriage, religious rights, whatever you don't like, go ahead. Respectfully, Your Honor, I have to disagree with you on two points. The first one being the state of Texas hasn't nullified anything. The state of Texas specifically set up in state law a recognition of this court's holdings in Casey providing an undue burden defense, particularly to recognize that this court's holdings bind state courts in their adjudication. And of course, the federal constitutional right can and must be made available in those state courts regardless. The second point being, to the extent that we're talking about sort of the extremist hypothetical where it's a $5 billion sanction, and by the way, court is on the moon. But by the way, this seems a pretty extremist hypothetical actual, you know? I mean, because the actual provisions in this law have prevented every woman in Texas from exercising a constitutional right as declared by this court. That's just not a hypothetical. That's an actual. That's just not true, Your Honor. There's evidence in the record that estimates that the number of abortions occurring right now in Texas is between 50 and 63 percent. I'm sorry. You're exactly right. I should have said every woman in Texas who has not learned and has not made a decision before six weeks. Respectfully, Your Honor, there's a big difference between asserting that a state has structured its courts to defy federal law to completely extinguish a right and saying that state has codified specifically this court's holdings in the applicable case, and then also to that extent, the deterrent effect has caused some diminution of the exercise of that right. That's a very substantial difference, and certainly a substantial difference for purposes of the judges of the courts of the states of Texas. So, again, just if I may, to go back to the extraordinary nature of the kind of remedy that the federal government is seeking. Just on the question of the kind of law, HB 1280, which is passed around the same time as I understand it, which is the law that, the trigger law, so to speak, that has ordinary enforcement mechanisms as I understand it. Criminal, sanction, enforced by the state, civil, and if you pair that with this law, it looks like this law was designed to avoid the review that that law kind of openly would be available. No doubt Texas, just like every other state when passing its laws, is well aware of the limits of federal jurisdiction and federal courts, and no doubt Texas crafted its law in part because it wanted to avoid federal reinforcement challenges as opposed to having those challenges in state court. I agree, that's an obvious purpose of this law, or one of the obvious ways that this law functions. That having been said, Texas doesn't commit a constitutional wrong by channeling its state court challenges into state court. That is not an independent Texas, that's not an independent constitutional obligation that Texas is under. It's not, it doesn't have to sort of fly blind as far as the collateral effects of  But it does have an obligation to follow, to respect people's federal constitutional rights. Absolutely, your honor, and again So if it's attempting to stifle those rights, chill their exercise, and keep plaintiffs away from a 1983 action and ex parte young liability, you say there's nothing wrong with that? Your honor, the limits of section 1983 and ex parte young's availability, specifically 1983, though Congress could extend ex parte young, are a matter of Congress. The idea that Texas would design a tort statute, or design a form of liability, that takes that in mind, and then says these claims have to go through the state tort system, the state court system. Texas judges are presumed by this court, and by for that matter, appellate judges in Texas, to follow this court's precedence fully and faithfully. Texas does not suppress any substantive right by saying that it prefers to see certain kinds of challenges brought through the state court system. And to the extent that one or more Texas state court judges fail to fully apply and faithfully apply this court's precedence regarding Casey or any other constitutional right, this court is, and always is, the supreme arbiter of properly presenting the question. The problem they raise, and I'll just have you answer it, is they say this law is designed to avoid all judicial review, because the penalties that are imposed for violation are so substantial, and then you combine that with the retroactivity provision, that people aren't going to be willing to engage in activity that's prohibited by this law. So there'll be no federal court review up front, no state court review on the back end, which is the exact, exact ex parte Young situation, you can put aside the named party, but that's the exact situation. Can you respond to that? Of course, Your Honor. Two points. The first one being that the procedural mechanisms, the attorney's fees shifting provision, and the preferential venue provision, to the extent that those things would be sufficient to effectively deny someone access to the courts standing on their own, and there are an awful lot of statutes and tort actions that deny access to the courts on their own. I mean, another complaint of my friends on the other side in Holman's Health was regarding the lack of non-mutual collateral estoppel. Well, this court has held that there are certain applications of non-mutual collateral estoppel that violate due process. It's never been a violation of due process to not import that doctrine into a state's adjudication system. So I think what we're left with here is the $10,000 potential damages award, or actual damages, that's doing the chilling, and to the extent that we're talking about— Well, General Stone, I think it's the combination of everything. You know, it's the $10,000, and it's everything that Justice Kavanaugh said, and it's other provisions behind. And we've had a little experiment here, and we've seen what the chilling effect is. You know, usually in these chilling effect cases, we're kind of guessing, well, this would sort of chill me. Here, we're not guessing. We know exactly what has happened as a result of this law. It has chilled everybody on the ground. Your Honor, to the extent that we're talking about whether one or more of these procedural mechanisms might itself end up being a burden in the undue burden sense, an individual— Please finish your answer. Thank you. An individual could themselves raise one of these procedural mechanisms or compliance with them in the state court action and say, this particular fees provision defending this action actually is an undue burden on me because it prevents me from raising my undue burden right itself. Or perhaps, for example, a petition clause, a due process clause. There might be other constitutional clauses that would protect an individual who's placed into a situation where the rules of the court itself prevent them from exercising an undue burden right. But still, what that wouldn't get you is access to pre-enforcement federal review of the substantive due process right that an action under SB 8 may or may not implicate. Thank you, counsel. Justice Thomas, anything further? Justice Breyer? Justice Alito? If some abortions have been chilled, is there any way to determine the degree to which that is the result of the potential for SB 8 suits from the degree to which it is attributable to the fear of liability if Roe or Casey is altered? I don't think there's a way of being able to disaggregate those, Justice Alito. And undoubtedly, individuals engaging in protected conduct that believe the protection might be removed or reasonably believe that, undoubtedly, there's an extra kind of chill they feel that's not attributable to the state or to anyone else for that matter. Would the issuance of the injunction sought by the United States have any effect on liability for abortions performed after the effective date of this act? It wouldn't have prevention of liability. It might stop anyone from filing a lawsuit. But of course, an injunction preventing someone from filing a lawsuit doesn't prevent a state law from being effective in the event they could file in another form or in some way  Well, if the injunction were entered and abortions were performed, would that immunize the abortion providers subsequently from liability? No, Your Honor. All that would do is would be preventing the individuals who had notice of the injunction. First, they'd have to have an opportunity to respond before they were enjoined. But let's skip over all of those injunctive problems. Those individuals would merely not be able to bring SB 8 suits. It wouldn't somehow dissolve in the abstract liability under SB 8 for performing the abortions. Thank you. Justice Sotomayor? Justice King? Gorsuch? Justice Kavanaugh? Can I just get more clarity about how you think that retroactivity provision works? Are you saying that if an injunction were entered and someone, some clinic performed abortions now that were then legal under current law, the law changes in the future such that the state could, going forward, restrict abortions at an earlier time? Are you saying that the state could then reach back and retroactively or allow suits that would reach back and retroactively impose liability on entities that were committing lawful acts as of the time? It would be private plaintiffs. But of course... Is that a yes? Yes, Your Honor, yes. And is there any limit on that retroactive liability? There might be. Again, I have to hypothesize perhaps a due process claim if it were in some extreme circumstance. But no, there's nothing on the face of SB 8 that would provide it. Doesn't that play into the chilling effect argument that was being raised that presumably one of the concerns is even though you would challenge it today and think you would engage in the activity today because you would be confident, you're chilled by the prospect of future changes and then someone reaching back and imposing millions and millions of dollars, right? Perhaps so, Your Honor, but I think that... Almost certainly so, right? Millions and millions retroactively imposed even though the activity was perfectly lawful under all court orders and precedent at the time it was undertaken, right? Undoubtedly, Your Honor. Okay. Justice Barrett? I just have one question. So we're talking about pre-enforcement review and the chilling effect. So if it's not available, your position is it's not available in federal court. And you pointed out when you were talking to me before in the last case that in state court, it's not available in the ex parte young sense in which you could obtain an injunction that would altogether protect you from enforcement activity, but you could on a case-by-case basis obtain an injunction against individual plaintiffs. You pointed out that that might ultimately give you more protection because it would go up the chain and there would be stare decisis effect. What if in addition to the other procedural obstacles that the law contains here, the legislature also added a provision saying there would be no stare decisis effect of any decision reached by the Texas Supreme Court? Then, Your Honor, I would assume it would make it even more imperative for one of those cases to be taken up by this court to resolve any questions that were presented there. That would mean that would be the only final way that you could have binding stare decisis effect. Thank you. Thank you, counsel. Mr. Mitchell. Mr. Chief Justice, and may it please the court. The interveners intend to sue those who violate Senate Bill 8, but only in response to conduct that falls outside the protections of Roe v. Casey. The United States cannot seek or obtain relief that thwarts the enforcement of SB 8 in those situations. The statute contains emphatic severability and saving construction requirements, and courts are obligated to preserve the constitutional applications of statutes to the maximum possible extent. The United States also cannot seek or obtain relief that would prevent private individuals from suing under SB 8, because any such relief would be a flagrant violation of the due process clause. A federal court cannot ban private individuals from petitioning the courts in a case to which they have not been made a party, and a federal court cannot foreclose those individuals from suing under SB 8 when they have been given no opportunity to defend the merits of the lawsuit that they intend to bring. I welcome the court's questions. I guess one would be, you've heard the exchanges with General Prelogger about the breadth of the asserted federal right, and she offered some answers to those questions about the limited nature, and I wanted to get your reaction to that. Yes, and Chief Justice Roberts, as I understand the United States' argument, as they've spelled it out on pages 10 and 20 of their brief, the asserted sovereign interest that they're making under NRA devs depends entirely on the existence of a congressional enactment, Section 1983, that does not go far enough in the views of the United States. What they're saying with respect to their sovereign interest is that Texas is thwarting Section 1983 and Ex Parte Young by enacting a statute that is not subject to pre-enforcement challenge under either of those sources of law. That, to us, is not in any way a sovereign interest under devs. That's a grievance with Congress, that Congress enacted a law, but Congress' law doesn't go far enough for the United States, because Texas has found a gap in this congressionally created remedial scheme that allows its law to escape pre-enforcement judicial review. The proper response in that situation is to go to Congress and ask Congress to amend the remedies that they have set forth, either by abrogating state sovereign immunity, or perhaps by enacting the Women's Health Protection Act, which would preempt SB 8 and also abrogate state immunity, and give the Attorney General the explicit cause of action. But in no way can equity be invoked to patch up the holes or the perceived holes in a statute that Congress has enacted. The second issue with respect to the sovereign interest that the United States asserts surrounds Ex Parte Young, because they claim in their brief that Ex Parte Young does not go far enough in authorizing a pre-enforcement challenge. And that, too, runs into the problem of Grupo Mexicano. There is clearly a traditional cause of action in equity for an individual to sue an individual officer that is violating his federally protected rights. But there is no traditional cause of action or remedy in equity that would ever allow a court to enjoin the state judiciary from even hearing a case that disclaims any such remedy on page 163 when it says that an injunction against the state court would be a violation of our whole scheme of government. At the same time, subsequent cases suggest that that language can't be read as broadly as you suggest. Shelley against Kramer, Terry against Adams, some of the others where they've recognized that courts can be viewed as part of a mechanism of enforcing particular rights. That's true. But in neither of those cases that Your Honor cited was there an injunction directed at the state judiciary itself. And under Grupo Mexicano, equitable remedies must be limited to those that were traditionally available in equity. And Ex Parte Young makes clear that a remedy that would enjoin or restrain a state court or a state judge from even considering a case is not a remedy that was traditionally available in equity. So it's impossible to escape the conclusion that this relief requested by the United States is barred by Grupo Mexicano. Well, Grupo Mexicano is notoriously cryptic. But Shelley against Kramer, Terry against Adams, they aren't really. I mean, if you look at Justice Frankfurter's opinion in Terry, he says, you know, somewhere, somehow, to some extent, you have to have some participation. That seems like a pretty flexible standard. Well, again, in Terry against Adams, the cause of action was undisputed. The existence of an Article III case of controversy was undisputed. And those are the two obstacles here that the United States must confront. So the fact that there is case law out there in which relief has been granted in similar situations involving situations where there was no question of the existence of an Article III case of controversy and no question of the existence of the cause of action does not give any leverage to the United States' argument here, when the very objection we're making is that they can't bring suit because there's no Article III case of controversy under Muskrat. And on top of that, they can't bring suit because there's no cause of action in equity, because the relief they seek is not relief that is traditionally available. Well, there is an Article III case of controversy with respect to the clerks, right? It's a direct adversity. The clerks want to file the action, and the plaintiffs don't want them to. True. But the clerks aren't the named defendants in this lawsuit. Only the state of Texas is. And under Muskrat, you cannot sue the sovereign entity when your complaint is that the sovereign is allowing its courts to adjudicate cases under a statute that you believe to be unconstitutional. It would be no different from the abortion providers suing the United States government because they're allowing SB-8 enforcement lawsuits to be heard under the diversity jurisdiction. There wouldn't be a case of controversy with the United States, simply because it's opening its courtroom doors to these claims. What they would have to do is wait for the cases to be filed, and then assert their constitutional challenges in the statute and that litigation between the private citizens. Do you agree to follow up on the Chief Justice's they entertain private civil suits? No, I don't believe they can be said to be enforcing state law. How do you deal with all the language in Shelley v. Kramer that says, that uses the word enforce? Because I think in that context, enforcement is coming after a judgment has been entered by the court, and then the judgment is being enforced. But simply adjudicating a case at the outset and simply docketing a complaint, that is not enforcement. And this goes to another problem with the remedy that the United States is seeking with respect to the private individuals. They're asking the court to restrain Texas from adjudicating lawsuits. They want to stop the clerks from docketing the complaints. They want to stop the judges from hearing or presiding over the cases. And then they say that injunction should extend to private individuals under Rule 65 D2C. The problem is the private individuals aren't doing any of those things that the state has been enjoined from doing. They're doing something entirely different. They're the ones who are filing the lawsuits. And the state can't file the lawsuit because it's not allowed to file it under the statute, and it therefore can't be enjoined from doing so because an injunction against the state that tells it not to file a lawsuit is enjoining the state from doing something that it never would have done in the first place. So there's another major problem with trying to get private individuals covered by this injunction that the district court laid out. The only conduct that private individuals are engaged in is conduct that the state of Texas is not. Counsel, a state is an idealized entity. The whole fiction of Ex parte Young, it had to be created because a state qua state can't act. It can only designate people to act for it. And so if the state is designating, whether it's ordinary citizens or the attorney general or its district attorneys, if it's designating those people to act for it, why aren't those people bound by any judgment that says, state, what you're doing is unconstitutional? And no agent of yours can enforce this law. Whether it's ordinary citizens, the attorney general, state licensing officials, clerks of court, or as Shelley recognized, a court system that would enforce a restricted covenant demanding segregation. Why aren't we in exactly that same position? They would be bound if they can satisfy the test of Rule 65 D2C, which says they have to be acting in active concert. Why? They aren't. Each of them is acting under the directives of the state law. So why aren't they acting like the state? Justice Sotomayor, I respectfully disagree with that characterization. I know you disagree. I'm going to explain why I disagree with it. The state is not in any way directing the activity, may I answer? The state is not directing the activity of these private individuals. The state has passed a law that gives them the option to sue and then it has washed its hands of the matter. So there is no joint participation with the state in their decision. How is that any different than there being state action when a prosecutor exercises a discriminatory vaccine challenge? Or how is there state action when state primary actors exclude racists or exclude people from primaries? And we've called that state action, even though the state has just given them the authority to act with no control over what they're going to do. So we have recognized that washing your hands doesn't insulate a state or insulate people from acting on behalf of the state. The prosecutor, in your hypothetical, is an employee of the state. He's part of the state government. He's part of the machinery of the state. The white primary example is a more Are you suggesting that states can hire agents to do unconstitutional acts? No, they cannot hire agents. So how can the state designate a private individual to act under its laws to violate a person's constitutional rights? There's not an agency relationship here, Justice Sotomayor. It's saying to it, you under this law, our law, you can act. I see my time has long expired. May I continue to answer? Briefly. Yes, I'm sorry. Justice Sotomayor, if there were an agency relationship, then Your Honor would be correct. They would be bound by an injunction under the principles of Rule 65. But there's no agency relationship here because the state is statutorily forbidden to enforce the law or have any enforcement role whatsoever. That role is given to private citizens. The state can't have any involvement. So there can't be joint conduct with the state with respect to that particular activity. Thank you, Justice Thomas. Justice Breyer. Justice Leal. Justice Sotomayor. Justice Barrett. Thank you, counsel. Rebuttal. Thank you, Mr. Chief Justice. I'd like to just make three points in rebuttal. And I'd like to begin with the point that I understood General Stone to be making, that if this court ultimately concludes in Whole Woman's Health that the providers can sue, that the authority we're claiming here to sue as well is extraordinary or unprecedented. And I think it is important to recognize that when the United States of America filed this suit to try to redress the harm to the supremacy of federal law in Texas, the Whole Woman's Health providers had not been able to obtain any effective redress from the courts. The law had been permitted to take effect, and it had immediately had its intended operation of chilling the exercise of constitutionally protected conduct altogether so that abortions that are protected under Roe and Casey after six weeks of pregnancy could not occur at all. And I think that that shows the threat to the supremacy that comes from this attempted design of a law to block access to the judiciary. It may well be, and I hope that this court holds in Whole Woman's Health that the providers can move forward, but that hasn't stopped the harm to the sovereign interest of the United States in the meantime as Texas has succeeded while these novel issues worked their way through the courts in blocking access to care that is protected under this court's precedence. And that leads me to my second point, which is to emphasize the nature of the sovereign interest here. It is in preventing a state from being able to act in direct defiance of this court's precedence and block access to the judicial review that Congress and this court have deemed necessary to vindicate federal rights and to further make it the state court mechanism that might provide some alternative basis for raising those constitutional claims wholly ineffective and unavailable. The final point is to just step back for a moment and think about the startling implications of Texas's argument here. Across the arguments this morning, Texas's position is that no one can sue, not the women whose rights are most directly affected, not the providers who have been chilled in being able to provide those women with care, and not the United States in this suit. They say that federal courts just have no authority under existing law to provide any mechanism to redress that harm. And if that is true, if a state can just take this simple mechanism of taking its enforcement authority and giving it to the general public backed up with a bounty of $10,000 or $1 million, if they can do that, then no constitutional right is safe. No constitutional decision from this court is safe. That would be an intolerable state of affairs, and it cannot be the law. Our constitutional guarantees cannot be that fragile, and the supremacy of federal law cannot be that easily subject to manipulation. So we would ask this court to hold that the United States can proceed with this action and affirm the preliminary injunction entered by the district court and immediately vacate the district entered in this case so that Texas cannot continue to deny women in its borders a right protected by this court's precedents one day longer. Thank you, counsel. The case is submitted.